Please step up and identify yourselves. Good morning, your honors, justices. I'm Miriam Solow. I represent Mordecai-Paskowitz's estate at this point. Good morning, your honor. James Carey, along with Pam Cahoola and Robert Mager, on behalf of Colleen Christopher-Ivy, is the independent administrator of the estate of Marjorie Cahoola-Ivy. Okay, so you know, we're pretty liberal, but just don't decide that you're going to make the same point 25 times. All right? With that, you can start. If it pleases the court, your honors, I represent the appellant Mordecai-Paskowitz, currently his estate. You've got to speak up. I'm sorry. And that is not a microphone. Right. That's a recorder. Right. I'm sorry. I'm a little jittery, but I'll get on my feet. I don't think anyone can deny that this is a case, a story of a tragedy that really didn't have to happen. The bare facts of the case are essential to an understanding of what the underlying arguments are here. Mordecai-Paskowitz lived with schizophrenia all of his adult life. By faithfully taking his medication, Mordecai controlled his disease and lived his life maintaining a very loving, long-term relationship with Marjorie-Ivy, who was known to all as Gail. Then for reasons totally out of Mordecai's control, Mordecai was deprived of his medication. Despite all of his efforts and the efforts of his social worker, the efforts of the pharmacist, his medication was withheld from him. Predictably, he was overtaken by his disease and it spiraled out of control, and Gail, the love of his life, ended up dead at Mordecai's hands. And, you know, in writing I tried to avoid using the word slayer statute and use the formal name, but it's called the slayer statute. And Mordecai did, in fact, end up killing the one person he loved more than anybody else in the world. Gail had left the bulk of her assets in various forms for Mordecai, and her relatives went to the probate court and asked the probate court, based on the probate act, to deny Mordecai any of those assets. Procedurally, they filed a 2619 motion to dismiss. The trial court found that there were material issues, issues of material fact, related to whether Mordecai had intentionally caused Gail's death and stated that Mordecai was entitled to a hearing on the merits. After the close of discovery, the estate filed a motion for summary judgment, and on the day scheduled for hearing, the court's sua sponte raised the issue of collateral estoppel. Parties then briefed that issue as part of the summary judgment motion, and the court entered summary judgment, specifically excluding every single argument under summary judgment that was made, except for collateral estoppel. These facts raise three issues that I'm asking this court to consider. The first issue is one, is it even possible that the legislature, in amending the probate act, intended that mentally ill individuals should be treated identically to the most malevolent criminals, first and second degree murderers? Second issue is, the appellee has advanced arguments that the facts show that Mordecai intended Marjorie's death, and references citations to the record. How can we rely on those citations to the record when they are miscited? And the third, in determining the definition of intent for the statute, what principles or definitions should the court be applying in dealing with the mentally ill? The question, you have to overcome the irrebuttable presumption of what determination was made in the criminal court. To get by that, I saw no cases cited. I saw argument. I saw no cases pointing to me that it was a different intent. I didn't hear the last few words. I'm sorry, Your Honor. I saw no distinction in any form of case showing a distinction in intent between the outcome of the criminal case and a different level for the probate case. The actual statute itself indicates that there's a difference. Because when the statute says that first and second degree murder are presumed to be unjustifiable and unintended, it says, for the purposes of the statute, telling us that the statute's definition is not the same. Otherwise, we wouldn't need the irrebuttable presumption. Otherwise, the statute, all the statute has to say is any time there's a finding of intent anywhere, that automatically precludes taking. But the statute doesn't say that. The statute says unjustifiable unknowingly, and but it says a person convicted of first or second degree murder of the decedent is conclusively presumed to have caused the death intentionally and unjustifiably for purposes of this section. In order to have found the respondent not guilty by reason of insanity, the criminal court had to find that the state proved beyond a reasonable doubt all the elements of first degree murder. Correct. And there's a specific reason for that. If one looks further into the statute, the statute explains that for most people, when they hear that you've raised the defense of insanity, they assume that that's an affirmative defense. Statute goes out of its way, the criminal statute, to say this is not an affirmative defense. Because if it was an affirmative defense, then the court would not be able to order that mentally ill person into some kind of treatment. So for the purposes of asserting a defense of insanity, you have to the court had to set aside some language that distinguished it from the concept of affirmative defenses. But when it came to the Probate Act, which is a separate act, it's not the same as the Criminal Act. The Probate Act made it very, very clear in its very words on its face that for the Probate Act, the only time the Criminal Act is an irrebuttable presumption is when it's first and second degree murder. Because otherwise the court could have said, we know from the legislative history that the legislators, excuse me, I need to calm down, the legislators were very, very aware of the issue of insanity. They could very easily have said as they were amending the statute, while they were discussing it, they could have said we in the statutes, in finding the irrebuttable presumption, they could have added the words a person convicted of first degree murder or second degree murder or NGRI murder is irrebuttably presumed to have caused the death intentionally and unjustifiably for purposes of this statute. But they didn't do that when we know for sure that they were addressing that issue. Sometimes we don't know what the legislature was addressing. But here we know they did. Here we know specifically. I believe that the face of the statute is what tells us that intent for the statute of the Probate Act is sui generis. It is not simply any criminal finding. Because they could at that time have put that language in. We assume, we normally assume the legislature knows everything. We're supposed to assume that. It's very rare that we know exactly what they were looking at and what they were talking about. Well, if we set aside the irrebuttable presumption, don't we still have a finding of murder here? Absolutely. Collateral estoppel? Collateral estoppel, with all due respect, it's kind of like a rose by any other name would smell as sweet. Collateral estoppel is another way of saying we're going to do an irrebuttable presumption. In fact, particularly in this case, because we know that the court itself, based on the facts, said that there were questions, issues of intent and what mortifies intent was. But the court itself said, no, I'm going to apply collateral estoppel and used only one case to rely on collateral estoppel and that was Savickas. And Savickas is totally inapposite. Savickas, in its very first sentence, says this is a contract case and we determine this by rules of construction of contracts. And contracts is based on the intent of the parties. If you're going to apply Savickas, then you have to look at the intent of the legislature, the intent of the statute, because when we apply statutes, we look at the intent of the legislature. When we apply contracts, we look at the intent of the parties. What about Daugherty and the other one I can't pronounce, Misovic? What about Daugherty and Misovic? Daugherty and Misovic are both distinguished for two reasons. Interestingly, neither of them relied on collateral estoppel. But they do refer to cognate ties. And that goes to my third point of what the issue is, what do we mean by intent. I thought the court's question was how do we deal with them in terms of collateral estoppel, which is simply they didn't apply collateral estoppel. At the very least, their understanding of the statute is can't apply collateral estoppel because we have to look at the facts. Daugherty specifically, the language of that case specifically said that it was upheld based on that case, the facts of that case. And the facts of that case, I will say this, I researched the issue. There's no way of citing oral arguments and what happened in oral arguments in another case. But Daugherty's facts are not on point. What might have been cognizant under Daugherty, if you look at Daugherty, and the trial court recognized that in its own decision, saying Daugherty is much different. And Misovic, I'm going to jump back and forth because they're kind of similar issues. In Misovic, the court relied on the fact that the criminal judge specifically said the words intent. He intended. That was one of the things. In Daugherty, the court looked at the statements, the testimony of the slayer. We don't know where the testimony was given. There weren't references. We don't know how the court determined cognizance. We don't know the specific facts. We do know Daugherty didn't take his medication. We don't know if Daugherty didn't voluntarily stop taking his medication. That was a question of the oral arguments. We don't know. Here in this particular fact, we know for certain, Mordecai didn't voluntarily do anything to cause his state of being. We know that he did everything he could to avoid it. More importantly, though, I shouldn't say more importantly, but equally important, is if you look at the case itself and if you look at the citations that are referenced by the appellee allegedly saying that in these cases, look, intent was considered by the criminal court. And there are four citations to that. There's one citation in the brief that says, both expert witnesses also testified, and I'm quoting, that Faskowitz intended to kill Gale, but that he met the definition of legal insanity. And they cite page C, the record, 380 at lines 13 through 19, and 384 at lines 16 through 20. Neither of those citations state that Mordecai intended. The first citation said, it is my opinion, within a reasonable degree of medical and psychiatric certainty, that Mr. Faskowitz was suffering from psychosis, schizophrenia, and because of this, his judgment was substantially impaired to the extent that he was not able to appreciate the criminality of his conduct. The second citation, C384, at lines 16 through 20, similarly do not contain anything about intent. Based upon her evaluation and review, it is Dr. Floriani's opinion that defendant was suffering from a mental disease or defect that resulted in a substantial lack of capacity to appreciate the criminality. There is a citation, supposedly, another citation, Matt, that police says that the trial court explicitly stated intent. In fact, and they reference pages C389 to 390, trial court did not utter one word regarding intent. Trial court said, I do find him not guilty by reason of insanity and NGRI. I am finding him the same in all three counts. Now, a citation to the record is supposed to be what's there, not what's implied, not what you think the court meant. And I pointed out in my reply brief the fourth time that was in their brief, where they say that the trial court said evidence of intent was presented, and it wasn't, and it doesn't say that. There must be a reason to constantly try to say that the criminal court found intent specifically, because that goes to the issue of when you apply collateral estoppel, there has to be some fairness and justice. And if we're going to be honest on our face, we know someone insane is going to come to court, like Mordecai did, and he's going to be advised to plead insanity, you were insane. Nobody sits there, you can go through their record, nobody sits there and says, by the way, you know, you can argue that you really didn't intend it, and then you'll be able to inherit, so don't do that. When you're insane, you come to the court and say, I'm insane. There was no real determination of intent. What you got, and I know this court sees cases all the time, how often do you get the criminal court judge saying, I hope you're going to sue the blank out of someone because of this tragedy, because Mordecai should have had medication and tried his best to get it. The question then becomes, how do you determine intent? Because if, in fact, we get to the point, you could read the legislative history to simply say intent, not wanting to include NGRI means insane people, should not be covered by the Slayer Statute just by virtue of that insanity, but they didn't use those words, irrebuttable presumption of insanity. What do we use to measure sanity? Doherty on the facts of Doherty used cognizant, but Doherty limited itself to the facts of that case, and it said, analyzing the facts of this case. What other guidance do we have in determining what we look for when we want to determine intent? Well, there's always, of course, the definition, whatever Webster says or other dictionaries, and they consistently use words like knowingly, wittingly, consciously, wittingly, you have to have your wits about you, but we have more than that by looking at the statute. We know that the law has evolved over the years in its understanding of mental illness and issues of chemical control of the brain. It's evolved much in the way that the court has evolved in terms of issues of equality and justice. I mean, you can go from Plessy v. Ferguson to Board of Ed. You can look at LGBT rights, even the rights of mentally ill to less restrictive environments. This evolution is reflected in statutory changes. January 1st, 2002, Section 563 of the Criminal Code took effect, and it says a person who is in a drug condition is not responsible for his conduct if such condition is involuntarily produced and deprives him of substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. The law has evolved to understand what controls an individual's actions and wills and understands that chemistry has a very large part to play. The very words of that statute are the findings of all the experts, that he was a suffering, that Mortify was suffering from a mental disease that resulted in a substantial lack of capacity to appreciate criminality of his conduct. Schizophrenia is a physical chemical disease no different than cancer or muscular dystrophy or any other ailment. Punishing Mortify for what happened would be the same as calling a cancer victim a suicide if the cancer victim had no access to treatment and was too poor to afford chemotherapy. As this Court is aware, I know because you issued the order, Mortify did die about three weeks ago, and he died never having found the freedom that maybe that legacy could have afforded him. But I'm here because the principles involved are at issue, and they ultimately reflect legislatures and our society's understanding of the causes of mental illness, and they reflect the lost treatment of those who are caught in its totally relentless and unbreakable web. We as a society have evolved in our understanding of mental illness. The legislature understood this specifically in acting and drafting legislation that at the very least should afford the mentally ill the same rights as any citizen. We should be declining to lump NGRI in with first-degree murderers. If we set aside the collateral estoppel and we look to the Daugherty case, the statements of the decedent that, I'm sorry, that the respondent made to his doctors that he intentionally stabbed the decedent, isn't that sufficient to award them summary judgment? No, because, I'm sorry, with respect, no. For two reasons. If you look at that statement in the summary judgment issue, and I did mention it in my brief, there was even a question of whether those statements are, in fact, invisible at a hearing before the probate court. They were in a stipulated report, and case law, which I cited in my brief, states that stipulated reports are good for the purpose of saying that that is the diagnosis of the doctor, those are the qualifications of the doctor, but it doesn't necessarily lend itself to the statements that were within. The second thing is Mordecai could have said intent, but that doesn't answer the question of what we mean by intent pursuant to the statute. Mordecai also said he didn't get his medication. He also said he couldn't get his medication. We know that. So these are questions for the trial court to sort out. But you're really just suggesting that the use, Mordecai's use of the term, should not be equated to or should not be comparable to its use as a term of art. Yes, Your Honor. Are we getting to the end? We do not have reached the end, because my last sentence was going to be, I'm asking this Court to reverse the order of the trial court, remand this matter to the trial court for any necessary proceedings. And on a personal note, I'd like to thank the Court for allowing me to end, to continue with this argument, even though Mordecai passed away. Thank you. All right. Thank you. I'm sorry. The water is mine, and it takes a little while. Don't feel bad. I got it screwed up back now. I lifted my daughter, so I empathize with that. May it please the Court. Appellant would, I think, with respect, like to misdirect us here a little bit today. We are not here to determine whether Mordecai Fastowitz's murder of Gail Ivey was a tragedy. It was. We're not here to determine whether Mordecai Fastowitz was insane such that he couldn't appreciate the criminality of his conduct. No one disputes that. And we're not here to argue over whether if Mordecai Fastowitz had continued to properly receive his medication, he wouldn't have murdered Gail. We'll never know that. Instead, you're being asked to decide whether the probate court properly determined that the criminal court's after a trial at which Mr. Fastowitz had a full and fair opportunity to present his case. And, in fact, the record shows he did present his case and defend himself. After which trial, the criminal court concluded that Mr. Fastowitz intentionally and unjustifiably killed Gail. And we know that the trial court had to make that determination because otherwise it couldn't have entered a verdict of not guilty by reason of insanity. Counsel, couldn't the criminal court have convicted the respondent of murder if it found that he only intended to cause great bodily harm and such acts created a strong probability of great bodily harm? That's not necessarily intent to kill. It's sufficient for a murder conviction, but not enough for a factual determination that we're looking at with collateral estoppel. Well, I think it would be enough for a factual determination on collateral estoppel. But factual determination, the analysis would be the same. The intent analysis in a civil case would be the same. Well, collateral is a murder statute written like that. If someone is, you know, the person says, I didn't intend to kill. I intended to cause great bodily harm. And that's sufficient for murder. So how could you say that that issue was determined, that he intended to kill? I'm sorry, Your Honor. Okay. Yeah. So I would suggest that the use of the term intent to cause intentional and unjustifiable causing the death in the probate statute, the analysis of that term would include more than just the first degree murder conviction, more than just the language in the first degree murder statute. It would include any actions that could result, where it would be reasonable for a court to determine that it would result in the death of the person. And here we know that the criminal court had to use the standard of beyond a reasonable doubt. Right. Beyond a reasonable doubt, there's alternatives in the murder statute. Either they intended to kill or intended to cause great bodily harm and would cause great bodily harm. Right. And that is not addressed in the case law, Judge. Right. And the court just made a general finding guilty without specifying. So how do we take that to say that on collateral estoppel grounds, say the court made a determination that the respondent intended to kill, let's see. I think what we have to do is look at the term intent and say in the civil statute and in the criminal statute, that intent to cause the death of Gail in this case is subsumed in the criminal court's determination on whichever basis it is of a finding of first degree murder. So, for example, we know that in the Slayer statute, there is an irrebuttable presumption that if there is a finding of first degree murder, putting aside NGRI, that that is enough. That that is irrefutable. We know that that's going to be enough. The only difference here, we have that finding by the criminal court, but it's now in the context of having an NGRI finding. I don't see the words of the legislature that has to be actually a finding of guilty in order for that to be irrefutable. That's correct. So we don't have that. We don't. And so I'm just analogizing the use by the legislature of the first degree murder conviction being an irrebuttable presumption and then laying that onto the intent requirement. And I think it is, it would be when you have that necessary finding by a criminal court, it then necessarily applies to the intent factor. I don't quite understand how you can conclude that. So the first element or the first factor to be considered in a collateral estoppel analysis is whether the issues are identical. If just following up on Justice House's question, if we have a generic finding of murder in the trial court and we have options within the criminal statute and there's no statement of it, how are we able to conclude that the issues decided have been identical? I'm struggling with the identical issue. So I think that the reason that they're identical, it isn't how we get to the finding of the intent to cause the death of Gail. It's that that finding was made. And if it's made in the criminal context, it's where you have the standard of beyond a reasonable doubt, then it will necessarily be the type of finding that is identical to a determination under the Slayer statute of intent where the standard of proof isn't even as strong. There are no cases on that. There are no cases on that. Thank you. In making your determination today as to whether to uphold Judge O'Malley's ruling on collateral estoppel, the standard of review is the standard found under C. Moore v. Collins. In 2015, the Supreme Court clarified the issues around the standard of review and indicated that it's a split standard. The standard is de novo when it comes to the three threshold requirements of collateral estoppel, which include that the issues are identical, that we have a final judgment on the merits in the first underlying case, and that we have the same party or party in privity in both cases. Do we have the same party? I think we do, Judge. We do? I mean, the only issue you have now is because Mordecai Faskowitz has just died, whether his estate can step in for him, and I think that the answer to that is yes. The party against whom the collateral estoppel would be used is Mordecai Faskowitz in this case, and Mordecai Faskowitz was the defendant in the criminal case. So we do have an identity of parties. We don't require an identity of a full identity of parties in the sense that we have the state involved in the criminal case, and now we have Marjorie Ivey's estate involved in the probate case. The issue on identity of parties relates to against whom is collateral estoppel being used. I hate to beat a dead horse, but don't we have to also find that in the prior proceeding, the issue was actually unnecessarily decided? Yes. Did we actually decide that he intended to kill the decedent? And was it necessary for the court to find that he intended to kill, since we have the alternative grounds in the first-degree murder statute? Well, if the court found, if we assume that for our purposes that the court found that Faskowitz intended to do great bodily harm, and we don't know otherwise, and Mr. Faskowitz then died as a result. I'm sorry. Ms. Ivey then died as a result of that. I believe that a civil court would come to the same conclusion in making a determination under intent under the Slayer statute. Did the conduct of the person as determined by the criminal trial court result in the death of Gail Ivey in this case? Well, that might be the conclusion after a trial, can't we see as a matter of law? I believe that we can. It was the conclusion after the trial in the criminal case. And I think that there is no, again, under collateral estoppel, that there is no need for a second trial when we've already had the finding by the criminal court of intent, whether it was intent to kill directly or to do great bodily harm, which then results in the death. I think the result would be the same, that a civil court would, that a court interpreting those two statutes would come to the same conclusion. Now, counsel also brought up another issue. We have a not guilty by reason of insanity defense. They're not really defending on the underlying part of it. They're basically the thrust of their case is to prove insanity, isn't it? No, Your Honor. That is not, and if you look at the criminal trial record, that isn't what happened. There was, the primary thrust of the defense was to prove insanity, but part of the case that they put on would be to defend against the possibility of guilt at all. Mr. Fastowitz had every incentive to put on the best possible defense, whatever that defense may be. And, in fact, the standard really isn't whether he did put on the best defense. It's whether he had the opportunity to do so. And clearly, if you look at the criminal court record, he had that opportunity. He had his own witnesses. He had his own experts, and he used them. He even had one of his experts take a half-hearted run at a justifiable homicide defense based on his belief that maybe he was acting in self-defense by killing Gail and saving the lives of other people who, in his mind, he thought she might kill. So he was putting on a full defense that went beyond just insanity. But it's really the opportunity to, when Judge O'Malley had to weigh the, under the Savickas standards, when she had to weigh the fairness of the application of collateral estoppel, she necessarily had to consider, and she cited to Savickas these provisions of Savickas, that Mr. Fastowitz had that full and fair opportunity. It's 697 and 698 of the record. But then Savickas, again, interpreted an insurance contract where the only issue was intended harm. Here we talk about intended to kill in the Slayer statute. That is a distinction, Judge. I believe that the principles of collateral estoppel as set forth in Savickas still would apply, but that is a difference of the case. I'll move on from collateral estoppel, unless you would have any other questions on that right now. I'll keep moving. Okay. So if you don't find, if you find that Judge O'Malley didn't properly apply collateral estoppel to this case, you can still affirm her. The Seventh Circuit in the Misevich case found that the, on a motion for judgment on the pleadings, found that this Slayer statute in a case where you have not guilty by reason of insanity verdict, can be applied as a matter of law. And I think that the Seventh Circuit's reasoning is, while it's not binding on this court, of course, I think it is a reasonable interpretation of what it would be likely that the Illinois Supreme Court would say Illinois law is. The Seventh Circuit in that case analyzed the Doherty case and its discussion of public policy and the legislative history behind the change to the Slayer statute and concluded, as did the Doherty court, that the Slayer statute would apply in cases of not guilty by reason of insanity and in the end decided that because, again, there's this necessary, and I know where you're going with this, Scott, but because there's this necessary implicit finding of intent, the intentional and unjustifiable killing, that the Slayer statute is implicated. Interestingly, I disagree with counsel, in the Misevich case, the trial court, the criminal court, along the lines of your discussing judgment, did not make any specific findings in the record that we can find, other than that there was an intentional and unjustifiable action. In fact, there were no findings that were any more specific in Misevich than there were in the case of Mordecai Fascules. Even if you find that Misevich shouldn't apply here and disagree with the Seventh Circuit, the motion for summary judgment determination made by Judge O'Malley should still be confirmed and the Slayer statute should still apply because of the, using a Doherty versus Cole analysis of the motion for summary judgment. This court may uphold summary judgment on any grounds supported by the record, and if you apply the Doherty standard for intent to cause death under the Slayer statute in this case, then we don't have to worry so much about what the criminal court found. Instead, we can look to the findings, to the record in the criminal court case. And counsel pointed to a few cherry-picked factual allegations that, undisputed factual allegations that we make and claimed that those allegations about intent were inconclusive, but those are in the context of page 25 of our brief of 13 or 14 bullet-pointed facts. They're pulled from the record, all addressing in general the proof of Mordecai Fascules' intent to kill Gail Ivey. His admissions, he admitted to killing her, those for insane reasons. He admitted that he went to her apartment with the intent to kill her. He admitted that he stabbed her repeatedly to make sure that she was dead. All of those facts were admitted to by Mr. Fascules in our judicial admissions for purposes of summary judgment. I see that my time is up. So respectfully, we do not waive any of the issues that we address in our briefs, but I haven't had the opportunity to address here today and request that trial court ruling be affirmed. Thank you. Thank you. Are you coming? Counsel asked this court, amongst other reasons, to uphold the ruling of a trial judge based on Doherty, and this court asked me about Doherty as well. It benefits all of us to actually look at Doherty, and with all due respect to the Doherty court, they got the legislative history wrong. If you look at Doherty, what they cite is Representative Van Dyne, and they say Representative Van Dyne said that the bill remains mute on criminal liability for insanity. They did not at all consider the testimony when Representative Van Dyne was trying to explain the bill. At the end, he said, am I saying this right, Mike? All right, I'm getting off this bill, and let Mr. Getty plead my case for me. Would you do that, Mike? Probate Court Judge Getty. I turn it over to Representative Getty. And that's the history, the legislative history that actually applied. They asked Judge Getty to explain, he was a legislator at the time, to explain the purpose of the bill, and that's when he specifically said, this doesn't address anything about insanity because we could not do that because of the difficulty of intent, and we must establish intent in order to make a person unable to inherit. So by not considering the actual expert legislator, so to say, who was deferred to and asked to explain this bill, Doherty looked at the wrong legislative history. Do we look to the legislative history, though? Well, that's what Doherty did. If we're going to depend on Doherty, Doherty relied on the legislative history in its application. So then one fairly has to look at what Doherty relied on, if we're going to cite Doherty, and say, wait a second, if Doherty got it wrong because they looked at the wrong page, the court should be looking at that as well before one relies on the case. That was the only point I wanted to make to this Court's attention. Thank you for your patience. Thank you. Both of you raised some interesting arguments, and it appears that the law isn't totally clear in this area. So there is a possibility the case might go back, but I guess in light of the fact that the party is deceased, it's going to make a lot of work if it does go back. But thank you. I really need to do the work here.